IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HARMON, | CASE NO. CV F 10-0499 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANT'S F.R.Civ.P. 12 MOTION TO DISMISS AMENDED COMPLAINT** |
| vs. | (Doc. 15.) |
| GE MONEY CORP., | |
| Defendant. | |

## INTRODUCTION

Defendant GE Money Bank, FSB ("GEMB") seeks to dismiss pro se plaintiff David Harmon's ("Mr. Harmon's") amended complaint ("AC") for failure to allege cognizable debt collection and/or credit reporting claims. Mr. Harmon filed no papers to comply with Local Rule 230(c) to oppose dismissal. This Court considered GEMB's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the June 10, 2010 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court DISMISSES this action against GEMB.

## BACKGROUND[1]

### Line Of Credit For Mr. Harmon's Uncle

Several years ago, Mr. Harmon told his elderly uncle Leonard Wood ("Mr. Wood") by telephone

---

[1] This factual recitation is derived generally from comments in the AC.

1

that Mr. Harmon "would co-sign for a hearing aid for him that would cost approximately $800." Mr. Harmon surmises that Mr. Wood opened a credit line with GEMB and thought that Mr. Harmon agreed to "charge on this account" things Mr. Wood needed. Mr. Harmon claims that he signed no papers and "heard nothing" until GEMB contacted him in February 2009.

GEMB "has taken unfair advantage" of Mr. Harmon and Mr. Wood "by tricking him into a credit agreement he could not afford." Early in 2009, Mr. Harmon "suddenly began to receive letters and phone calls from a business I have never heard of called GE Money. For months they said I owed them $4800." Mr. Harmon "never signed a contract of any type" and did not "co-sign an agreement to accept responsibility for an $800 amount, much less for a line of credit of $5000."

### Mr. Harmon's Claims

The AC alleges that between May 2005 and April 2010, GEMB "employed a fraudulent credit marketing technique that resulted in debt and interest accumulation that was concealed from [Mr. Harmon] within a credit account bearing my name, but which [Mr. Harmon] did not authorize" to result in a "false assertion" that Mr. Harmon "was liable for that debt." The AC alleges that GEMB failed to meet legal and ethical standards in that it failed to:

1. "[I]nform an alleged co-signer for a $5000 credit line of the commencement of and terms of a credit agreement";
2. "[O]btain alleged co-signer's informed consent and signature on the contract for the credit agreement";
3. "[K]eep alleged co-signer informed of the ongoing credit account and its increasing balance";
4. "[I]nform the alleged co-signer that a third party report about unpaid balance was imminent";
5. "[W]ithdraw an illicit credit claim after being accurately informed that plaintiff was not a co-signer for the account"; and
6. "[E]xpunge a false credit claim from credit tracking records."

The AC asserts the following entitled "causes of action":

1. "Fabrication of Debt Obligation" that Mr. Harmon "never was offered, and never signed

        or cosigned, a contract of any kind with GEMB";

2.   "Nondisclosure of Debt to Alleged Obligor" that Mr. Harmon "never experienced any contact with or from GEMB regarding the account in question, either at the inception of the account in May, 2005, or during the debt accrual period" and "should have been notified that there was an account in my name and whether insufficient payments were being made toward the balance";

3.   "Nonwithdrawal of False Debt Claim by Defendant" that in February 2009, Mr. Harmon "notified GEMB of the erroneous nature of their assertion . . . and that [Mr. Harmon] did not feel [he] should be obligated to make any payments on an account of $4359" and that GEMB "could not prove the debt, but would not withdraw [its] claim that [Mr. Harmon] was the obligor"; and

4.   "False Report of Debt to Credit Tracking Agencies" that "GEMB reported chronically incomplete payments on this account to the credit tracking bureaus" and that his "credit score has fallen dramatically."

The AC seeks to recover for inconvenience, lost wages, legal process costs, emotional distress, intimidation, and personal credit damage as well as punitive damages. The AC further seeks this Court's "mandate for GEMB to expunge all adverse credit records."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

GEMB seeks to dismiss the AC as "defective" and "vague and ambiguous" in failing to "satisfy pleading requirements" and asserting "inflammatory and unfounded accusations against GEMB which appear to be plaintiff's personal opinions." GEMB notes that the AC lacks "a cognizable legal theory and sufficient facts under a cognizable legal theory."

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*,

745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

4

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to GEMB's challenges to the AC.

/ / /

5

**Failure To Satisfy F.R.Civ.P. 8**

The AC references four "causes of action" which GEMB describes as "vague and ambiguous" and "unintelligible." GEMB further notes that the "purported causes of action" "would require GEMB to speculate as to the legal violations plaintiff alleges."

F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

GEMB notes that the first cause of action for "Fabrication of Debt Obligation" is based on 12 C.F.R. § 227.14, which address disclosures to co-signers for certain consumer credit. GEMB points to the claim's limited allegation that Mr. Harmon "never was offered, and never signed or cosigned, a contract of any kind with GEMB." GEMB further notes the absence of allegations "about what disclosures, if any, he received or did not receive." GEMB points to the illogic of a claim that GEMB failed to meet its obligation to provide disclosures given Mr. Harmon's contention that he never signed an account agreement.

As noted by GEMB, the second cause of action for "Nondisclosure of Debt to Alleged Obligor" indicates that it is based on "Section 127(c) TILA (15) U.S.C. 1637." GEMB notes the claim's failure to cite a legitimate or applicable statutory reference.

GEMB faults the third cause of action for "Nonwithdrawal of False Debt Claim by Defendant" for its reliance on illegitimate citations to "FCB 161(a)(3)(ii)" and "12 part 809 FDC 15 U.S.C. § 1692g(a)(4)." GEMB criticizes the AC's references without explanation to "a written notice" requirement, "verification of the debt," and other correspondence.

GEMB points to the "unintelligible citation" to Rule FCB 162(b) in the fourth cause of action for "False Report of Debt to Credit Tracking Agencies." GEMB notes that although the claim appears based on credit reporting, it lacks necessary elements of a cognizable claim.

The AC fails to satisfy F.R.Civ.P. 8. The AC makes mere references to "Fabrication of Debt Obligation," "Nondisclosure of Debt to Alleged Obligor," "Nonwithdrawal of False Debt Claim by Defendant," and "False Report of Debt to Credit Tracking Agencies" are insufficient to state claims. The AC lacks facts to support claims or valid, cognizable legal theories as to GEMB. GEMB is correct that the AC fails to "assert violations of any applicable laws" given the AC's illegitimate statutory references. The AC fails to give GEMB fair notice of claims plainly and succinctly to warrant dismissal of the AC.

**Absence Of Private Right Of Action Under 12 C.F.R. § 227.14**

GEMB further faults the first cause of action for "Fabrication of Debt Obligation" given the absence of a private right of action under 12 C.F.R. § 227.14, upon which the claim is based. GEMB

explains that banking regulators enforce the regulation though a complaint lodged with the Federal Reserve or other appropriate agency. *See* 12 C.F.R. § 227.11(c), 227.2.

GEMB is correct that in the absence of a private right of action, Mr. Harmon is unable to pursue a claim based on 12 C.F.R. 227.14.

### Debt Collection

GEMB argues that since it is not a debt collector, it is not subject to liability for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq.

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985). The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. 1962a(6)(F). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208.

GEMB is correct that a FDCPA debtor collector does not include lenders, such as itself, who collect debt in their own name. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996); *Kloth v. Citibank (South Dakota), N.A.*, 33 F.Supp.2d 115, 1998 (D. Conn. 1998) ("Generally, the FDCPA does not apply to creditors."). The AC fails despite potential reliance on the FDCPA.

### Credit Reporting

GEMB explains that the fourth cause of action for "False Report of Debt to Credit Tracking Agencies" appears to attempt to allege violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., and to identify GEMB as a furnisher of credit information.

15 U.S.C. § 1681s-2 "identifies two duties imposed upon such furnishers of [credit] information: the duty to provide accurate information [§ 1681s-2(a)] and the duty to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency [§ 1681s-2(b)]." *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 501 (W.D.Tenn.1999). Courts have "uniformly" concluded that 15

U.S.C. § 1681s-2(b) "provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information was disputed." *Aklagi v. NationsCredit Fin. Services Corp.*, 196 F.Supp.2d 1186, 1193 (D. Kan. 2002) (citing, *inter alia*, *Hasvold v. First USA Bank, N.A.*, 194 F.Supp.2d 1228, 1236 (D.Wyo.2002)). GEMB notes that a credit information furnisher's duties under 15 U.S.C. § 1681s-2(b) are triggered by a credit reporting agencies' notice that a consumer disputes a credit report item to require the furnisher to investigate and report back to the credit reporting agency within time permitted under 15 U.S.C. § 1681i(a)(1) for the credit reporting agency to conclude its own investigation. *See* 15 U.S.C. §§ 1681s-2(b)(1), (2). GEMB points to the absence of "intelligible" FCRA violations given that the AC does not allege that a credit reporting agency furnished notice of a dispute to GEMB. GEMB is correct. The AC lacks a cognizable FRCA claim to further warrant its dismissal.

## CONCLUSION AND ORDER

Dismissal of this action is warranted given that the AC lacks sufficient facts or a cognizable legal theory for a claim against GEMB. A further amended pleading is unable to cure deficiencies. As such, this Court:

1. DISMISSES with prejudice this action against GEMB; and
2. DIRECTS the clerk to enter judgment in favor of defendant GE Money Bank, FSB and against plaintiff David L. Harmon and to close this action.

IT IS SO ORDERED.

**Dated:   June 1, 2010**                              /s/ Lawrence J. O'Neill
                                                                     UNITED STATES DISTRICT JUDGE